THE STATE OF IOWA, Appellee, v. CHARLES CARPENTER, Appellant.

**Rape:** CONTINUANCE. On a prosecution for rape, pregnancy of the prosecuting witness is not ground for continuance.

**Jurors:** WAIVER OF CHALLENGE. Failure to challenge a juror for cause and to inquire into his competency is a waiver of the challenge.

**Evidence:** PRIOR ASSAULTS, ETC. In a prosecution for rape certain rulings on evidence are sustained: (1) Admission of evidence of prior assaults limited to the question of intent; (2) of complaints of prosecutrix; (3) denial of right on cross-examination to inquire of prosecutrix if she had testified of the matter inquired about during her examination in chief; (4) refusal of right to show relations of prosecutrix with another, where no purpose to show improper conduct appeared; (5) denial of right to ask a witness if he did not know that certain evidence was material; (6) admission of evidence as to weight and health of prosecutrix; (7) rejection of evidence afterwards permitted; (8) refusal to permit a conclusion where the facts were detailed.

**Evidence on preliminary hearing:** IMPEACHMENT. The testimony of a prosecuting witness taken before a committing magistrate can only be offered on the trial for impeachment purposes, not as substantive proof, the weight of which is to be determined by the jury.

**Evidence:** IMPROBABILITY: DIRECTED VERDICT. The fact of conception as a result of an alleged ravishment is a question for the Jury, and defendant would not be entitled to a directed verdict of not guilty because of its improbability, where it is not shown to have been impossible.

**Instructions:** QUANTUM OF EVIDENCE. Where the quantum of evidence required to convict is clearly stated, it is not necessary to use the words "beyond a reasonable doubt" in each instruction.

**Instructions:** CORROBORATING EVIDENCE. Where it clearly appears from the instructions taken as a whole, that the corroborating evidence required to warrant a conviction for rape must be independent of that coming from the prosecutrix, an instruction that the jury might consider all the facts and circumstances shown at the time of the alleged offense in determining whether there was corroborating evidence, was not misleading.

*Appeal from Mahaska District Court.*—Hon. W. G. CLEM-
ENTS, Judge.

TUESDAY, MARCH 8, 1904.

DEFENDANT was indicted, tried, and convicted of the
crime of rape, committed, as was alleged, upon the person
of one Mae Seibert. From the verdict, and the judgment
rendered thereon, defendant appeals.—*Affirmed.*

*Dewey & Dewey* and *McCoy & McCoy,* for appellant.

*Chas. W. Mullan,* Atty. Gen.; *James A. Devitt,* Co.
Atty., and *L. C. Blanchard,* for the State.

DEEMER, C. J.—The assignments of error cover a wide
range, and present nearly every question which could arise
on a trial of this character. It will not be necessary to
consider every point made, for most of them have already
been determined adversely to appellant's contentions in for-
mer decisions of this court.

After the jury had been impaneled for the trial of the
case, the prosecuting witness was placed upon the witness
stand and asked a few preliminary questions, when defend-
ant's counsel requested permission from the
court to ask her a few questions. This re-
quest was granted, and, pursuant thereto, counsel asked
her if she was in a family way. She responded that
she was. She was then asked if she expected to give birth
to a child in due time. The witness thereupon broke
down and cried, and did not answer. Defendant's counsel
thereupon gave notice that they would file a motion for a
continuance. The witness, still crying, was permitted to
leave the room until this motion could be made and dis-
posed of. A motion for a continuance was then filed, to
which the State made objections, and the motion was sub-

1. CONTINUANCE.

mitted and overruled. The witness was again called to the stand, and the trial was resumed. The ruling on the motion for a continuance is complained of. The grounds of the motion were the pregnancy of the prosecutrix, which it is said, was evident to all who saw her, and the further fact that she was likely to give birth to a child at any time, and that, if this occurred, it would conclusively appear that her condition was not due to defendant's alleged intercourse with her. Pregnancy of the prosecutrix has not heretofore been considered ground for a continuance. Her condition might, of course, appeal to a jury, and tend to enlist its sympathies; but the presence in the courtroom of a child born as the result, or as the claimed result, of a rape, would be quite as potent in this respect. There was in the motion no competent evidence as to when the child was likely to be born. Such as there was, was as visible to the jury as to the defendant who made the affidavit, and, if there was anything in this feature of the case, the defendant had the benefit thereof. There was no error in overruling the motion for a continuance. Indeed, the condition of the woman might well have been ground for proceeding with the trial at that particular time. The dangers incident to childbirth may well be taken into account when such applications as this are made. Defendant did not claim that he could produce any other or further evidence than that already referred to, even if a continuance should be granted. That the prosecutrix cried when asked some of the questions propounded to her was no ground for a continuance. It is not claimed that she was simulating grief. The ruling on the motion was undoubtedly correct.

II.    One Rowe was called as a juror in the case. In answer to certain questions addressed to him by counsel for the State he said that he had both heard and read of the case, and that defendant had talked to him about it. He was further asked these questions, to which he made the answers indicated: " Q.

2. JURORS:
   waiver of
   challenge.

From what you heard or read, did you form any opinion as to the guilt or innocence of the defendant? A. Yes, sir. Q. Do you have that opinion now? A. Yes, sir. Q. You are satisfied in your own mind that there is a bias in your mind one way or the other as to his guilt or innocence? A. No, sir; there is not. Q. Are you satisfied that you could sit as a juror, and arrive at a verdict in this case, based entirely upon the evidence and the instructions of the court, without being influenced in any manner by anything that you have heard or read in the case? A. Yes, sir; I could. Q. Do you know of any reason why you should not sit as a juror in this case? A. I do not." Defendant's counsel asked the juror no questions, but accepted him, and he was one of the jurors who sat in the case. After the verdict was returned, defendant, in his motion for a new trial, claimed that this juror was incompetent, in that he had both formed and expressed an opinion against him (defendant), and was unduly biased in the case. A great many affidavits were taken on this question, pro and con, but in our view of the case, these need not be considered. Were we to do so, we should not feel disposed to find contrary to the district court on the issue thus presented. Taking the answers given by the juror on his *voir dire,* as a whole we think it clearly appears that he had an opinion with reference to the guilt or innocence of the accused, and that it was in part, at least, based upon conversations had with the defendant himself. Defendant's counsel seemed content to take their chances on the juror, and did not ask him a single question regarding the nature or quality of his opinion, or call for anything touching his qualifications. The rule in this State now is that a failure to challenge a juror for cause as to his competency, and to examine him or other witnesses in support of the challenge, is a waiver of the right of challenge, although the fact of incompetency is not known to the party until after trial.

*State v. Pickett,* 103 Iowa, 714. That case seems to rule this one on the point now under consideration.

III. The prosecuting witness was permitted to detail other and prior assaults made upon her by the defendant, over the objections and protest of his counsel. Such testimony was admissible. *State v. Trusty,* 122 Iowa, 82, and cases cited. This is a well-known exception to the general rule regarding testimony as to other offenses. The court properly instructed the jury as to the effect to be given this evidence; saying that it should only be considered on the question of the defendant's intent in doing the acts complained of, if he did them.

3. EVIDENCE: prior assaults, etc.

Many other rulings on the admission and rejection of testimony are complained of, some of which we shall notice. Complaints were made by the prosecutrix to her brother and mother the day the alleged offense is said to have been committed. Evidence of such complaint was properly received.

The prosecutrix, while being cross-examined by the defendant's counsel, disclosed certain matters which had not been called out by the county attorney, and she was asked if she said anything to the county attorney about them when being examined in chief. Objection thereto was sustained, and, as we think, properly. The jury knew the fact as well as any one.

She was also asked about a young man who came to her father's house to play an organ, to whom her parents had objected, but was not permitted to answer. There was no error in this ruling. Defendant did not claim that he was going to follow this up by showing improper conduct between the prosecutrix and this young man; hence the testimony was properly rejected. *State v. McDonough,* 104 Iowa, 6.

It was claimed that a witness for the State, who was examined before a committing magistrate, changed his tes-

timony when a witness upon the trial of this case, to the material disadvantage of the defendant; and he was asked on his cross-examination during the trial if he did not know that this matter, which was claimed to be new, was a very important fact. Objection to this was sustained. While it might well have been overruled, yet, as the method and manner of cross-examination is largely discretionary with the trial court, we should not interfere in the absence of some showing of abuse of discretion. That does not appear in this case.

Evidence as to the weight and condition of health of the prosecutrix was a material inquiry, and there was no error in permitting the State to show these matters.

Other rulings are complained of. Conceding some of them to have been erroneous, yet they were without prejudice, for the witnesses were each permitted to answer the very questions to which objections had been sustained, without any objection being interposed. This is particularly true as to the prosecutrix's appearance immediately after the occurrence, when she and her brother took refuge in a barn to protect themselves from a rainstorm. The whole matter was fully covered. And the same may be said with reference to certain hypothetical questions propounded to doctors who were examined both for the State and the defendant. A book on anatomy was offered in evidence as a part of the cross-examination of one of the State's witnesses. It was not offered for the purpose of impeaching him, but, rather to sustain him, and to get certain cuts and illustrations before the jury. With these cuts was some printed matter, which the trial court thought should not go to the jury. We do not know what this was; but presuming, as we must, that the trial court was correct in its ruling, in the absence of evidence to the contrary, we must assume that it was sufficient to justify the ruling. At any rate, the statements made in this book were not competent as substantive evidence.

Certain rulings on the admission of expert evidence are complained of. These seem, as a rule, to be correct, but the court directed the witnesses to make their answers short and to the point. One of them, in particular, was inclined to give an essay on medical jurisprudence, and we see no error in the ruling thus complained of. There was no prejudice, in any event, for the witnesses were afterwards permitted to answer all relevant and material questions. As to the principal question to which objection was made, it was without support in the evidence, and the objection thereto was properly sustained.

But one other ruling on evidence need be considered. A witness who had looked over the ground was asked as to whether certain objects would interfere with the line of vision between defendant's house and the straw stack where it is claimed the ravishment occurred. The question was leading, and no prejudice resulted, in any event. The witness gave the exact situation and conditions, and it was for the jury to say whether or not one of the defendant's main witnesses could have seen what she said she saw. Moreover, the conditions were not the same as they were when the ravishment is said to have occurred.

IV. At the conclusion of the evidence, defendant filed a motion for a verdict of not guilty. This was overruled and of this complaint is made. It is also argued **4. EVIDENCE ON PRELIMINARY HEARING: impeachment.** with great seriousness that, taking the entire evidence, there was not sufficient to justify a conviction. This argument is based upon two thoughts: First, the improbability of the story told by the prosecutrix; and, second, the evidence given by her before the committing magistrate. Her testimony before the magistrate was introduced for the purpose of impeachment. It was not in itself substantive proof of anything. If believed by the jury, it would tend strongly to discredit the prosecutrix, and, if no explanation were offered, might be sufficient in itself to justify an acquittal,

on the theory that the prosecutrix did not tell the truth when on the witness stand in this case. But, after all is said, it is manifest that this was a question for the trial jury. It was for that body to say whether or not, in view of all the testimony, the witness spoke the truth while on the witness stand. The State attempted to explain these contradictions, and the trial jury evidently accepted them as sufficient. It is not for us to say that they were insufficient. The case is presented to us as if these contradictory statements were substantive proof of the facts in the case. This is manifestly not true. They were admissible solely for impeaching purposes, and it was for the jury to say what weight should be given them.

The other matter relates to the improbability of the witness conceiving at the time she claims she was ravished. This was based upon the theory that her last menstrual 5. EVIDENCE: period had so far passed that conception was improbability; directed improbable, and upon the further thought verdict. that conception at such a time was the more improbable on the State's theory of ravishment. This was also a question for the jury, and was, no doubt, presented for all it was worth by the able counsel who conducted the defense. We cannot say, as a matter of law, that conception could not occur under such circumstances. Indeed, none of the experts were bold enough to make such assertion. They gave it as their opinion that such a result was improbable, under the circumstances disclosed, but did not pretend to say that it was impossible. After all, this whole matter was for the jury. We may add that the defendant's experts based their opinion upon a state of facts which was in dispute. The jury may well have found that the State's contention in this respect was true, and given little heed to the opinion of the defendant's experts.

V. Misconduct of counsel for the State in argument to the jury is complained of. We have gone over this matter with care, and find that counsel did not transgress in the re-

spects charged. What they said was based upon the evidence, or upon legitimate inferences therefrom. No good purpose would be subserved in setting out the statements made by counsel of which complaint is made. Suffice it to say, we find no error.

VI. Complaint is made of the instructions. Save as to those relating to corroborative evidence, which we shall hereinafter set out, there is little room for argument. As a rule, 6. INSTRUCTIONS: they are the stereotyped ones generally given in *quantum* of evidence. cases of this character. One of them says that " if the jury is satisfied from the evidence," etc., certain results should follow, without saying that it should be satisfied beyond a reasonable doubt, etc. In other parts of the charge the quantum of · evidence necessary to a conviction was expressly stated, and this was repeated from time to time in the charge as given. Under such circumstances, it is not necessary to use the words " beyond a reasonable doubt " in each and every instruction. *State v. Dunn,* 116 Iowa, 219, and cases cited.

VII. The instructions as to corroborative evidence which are complained of read as follows:

" The defendant in a prosecution for rape, or an assault with intent to commit rape, cannot be convicted upon the testimony of the person injured, unless she be corroborated by other evidence tending to connect the defendant with the commission of the offense. The fact that a crime has been committed by some one may be established by the testimony of the injured party alone. But in order to convict for the offense of rape, or assault with intent to commit rape, it is necessary that the testimony of the injured party be corroborated by other evidence tending to connect the defendant with the commission of the crime. *In arriving at a conclusion as to whether the prosecutrix, Mae Seibert, has been corroborated by other evidence tending to connect this defendant the offense of rape, or assault with intent to commit rape, you may consider all the facts and*

*circumstances surrounding the case established by the evidence at the time of the commission of the offense, if one was committed, and all other circumstances as shown by the evidence may be considered by you in determining whether the prosecutrix, Mae Seibert, has been corroborated by other evidence tending to connect the defendant with the commission of the offense of rape, or assault with intent to commit rape, if either of such offenses was committed.* Mere proof of opportunity to commit the offense is not sufficient corroboration. However, it is enough that the corroborating evidence tends to strengthen and corroborate the prosecutrix in connecting the defendant with the commission of the offense, and point out the defendant as the person who committed the offense, if any was committed. It is for you to determine whether the testimony of the prosecutrix in this case has been sufficiently corroborated by other evidence tending to connect the defendant with the commission of the offense of rape, or assault with intent to commit rape, if either of such offenses has been committed.

" You should acquit the defendant of the offense of rape unless the testimony of Mae Seibert has been corroborated by other evidence tending to connect the defendant with the commission of such offense. And you should acquit the defendant of the offense of assault with intent to commit rape unless the testimony of Mae Seibert has been corroborated by other evidence tending to connect the defendant with the commission of such offense.

" Evidence has been admitted tending to show that the prosecutrix, Mae Seibert, made complaint to her brother and mother on July 18, 1902, that she had been ravished by defendant. Such complaints, if any, would not be evidence corroborating the testimony of prosecutrix tending to connect the defendant with the commission of the offense of rape, or assault with intent to commit rape, if either of such offenses was committed; and neither would the existence of .injuries, if any, to her genital organs, be corroboration of

the testimony of the prosecutrix tending to connect the defendant with the commission of either offense of rape, or assault with intent to commit rape, if either offense was committed; but the evidence of such complaints was admitted as tending to confirm or corroborate the truth of her testimony. The law is that a failure by the prosecutrix to immediately complain is looked upon as a suspicious circumstance that her story is a fabrication. Hence the testimony of such complaints was admitted for the purpose of testing the accuracy and veracity of the prosecuting witness, and for no other purpose."

The italicized portion of these instructions is complained of. Standing alone, it may be vulnerable to the attack made upon it. But when taken in connection with the other instructions, we think it clearly appears that the corroborating evidence must be other than that coming from the prosecutrix herself. The facts and circumstances surrounding the case, as established by the evidence, at the time of the commission of the offense, and all other circumstances as shown by the evidence, were to be considered by the jury, according to the italicized portion of the instruction quoted, in order to determine whether or not there was other evidence tending to connect the defendant with the commission of the offense. Nowhere is there any intimation that these facts and circumstances, or any of them, would, in and of themselves, constitute that other evidence. Indeed, that thought is distinctly negatived. The jury was simply to consider these matters in order to determine whether there was any evidence other than that coming from the prosecutrix which tended to connect the defendant with the commission of the crime charged, or with the included offense. This is made plain by the other instructions quoted. So construed, there is no difficulty with the instruction, and there is no reason to believe that the jury understood from this instruction that it might consider evidence coming from the prosecutrix

*7. INSTRUCTIONS: corroborating evidence.*

as that other evidence which is required in such cases. To determine the question of corroboration, the jury, of necessity, had to consider the evidence of the prosecutrix, for the purpose of arriving at a conclusion as to whether or not an offense had been committed, and the particulars thereof; and, if it found a crime had been committed by some one, it, of necessity, had to take this evidence into account, in order to determine whether or not there was any other evidence corroborative of the prosecutrix which tended to connect the defendant with the commission of that crime. Taking the instructions as a whole, we think the jury could not have been misled by the use of the italicized words. Running through the entire charge on this subject is the thought that the corroborative evidence necessary to justify a conviction must come from some one other than the prosecutrix. The instruction has support in *State v. Baker*, 106 Iowa, 100, and *State v. McLaughlin*, 44 Iowa, 82. That it is proper to consider the testimony of the prosecutrix as to the facts and circumstances of the transaction, in order to determine whether or not there is other evidence tending to connect the defendant with the commission of the offense, is well settled. See cases cited in *State v. Baker, supra*. There was sufficient corroborative evidence to justify the instruction, and to take the case to the jury.

We have now gone over the entire record, and, while we might not have come to the same conclusion as the trial jury did had the case been submitted to us for decision upon the facts, yet it is not such a one as to justify us in interfering. If the prosecutrix is to be believed, the defendant committed a rape upon her. The jury evidently accepted her story, and, while it must be confessed that the showing as to resistance on the girl's part is not strong, yet it appears that she was not strong, was in ill health, weighed but 100 pounds, and, according to her version of the affair, was much intimidated by the defendant, who, it appears, was a robust, healthy, and active man.

There is no prejudicial error in the record, and the judgment must be, and it is, AFFIRMED.