## UNITED STATES v. LOVELY.
### Cr. No. 17107.

District Court, E. D. South Carolina.
Columbia Division.

May 14, 1948.

Ben Scott Whaley, U. S. Atty., of Charleston, S. C., and H. H. Edens, Asst. U. S. Atty., of Columbia, S. C., for the United States.

Claud N. Sapp, Jr., and Walter S. Monteith, both of Columbia, S. C., for defendant.

WYCHE, District Judge.

The defendant in this case, a First Lieutenant in the United States Army, was convicted of raping a virgin, a girl twenty years old, on property of the United States Government at Fort Jackson, South Carolina. The verdict of the jury was "Guilty Without Capital Punishment".

Before imposing the mandatory sentence of life imprisonment upon the defendant, I overruled his motion for a new trial and stated that I would file a memorandum opinion giving my reasons therefor.

It is not necessary for the purpose of this opinion to state the outrageous facts disclosed by the Government's evidence.

The main ground of the defendant's motion for a new trial is that the court erred in admitting evidence of a rape by the defendant upon another girl under similar circumstances, in the same vicinity using the same general method, fifteen days before he is alleged to have raped the prosecutrix in this case.

At the time this testimony was offered by the Government there was in evidence a written statement of the defendant in which he contended that he had not raped the prosecutrix, that he had not had sexual intercourse with her; that on the night in question he left the Officers Club at Fort Jackson, South Carolina, with the prosecutrix at about 11:15 p. m., that upon reaching Smith's garage, about six blocks away, he found he was getting sleepy and could not control the car properly, so he parked the car, slid down in the seat and went to sleep; that the prosecutrix was in the car when he went to sleep, but when he awakened she was gone; that he went back to his quarters and went to bed; thereby, in effect, contending that he was not present at the scene of the crime when it was committed. However, subsequently, and, after the Government had closed its case, when the defendant took the witness stand to testify in his own behalf, he admitted that this part of his statement was false; that he was present at the scene of the crime, that he had had sexual intercourse with the prosecutrix at that place on the night in question, but claimed that it had been with her consent. This was the first information the court had that the defendant would admit having had sexual intercourse with the prosecutrix at the scene of the crime on the night in question, or that he had abandoned his defense of alibi contended for in his written statement.

The prosecutrix testified that she was raped on the night of October 19, 1947; the other girl testified that she was raped on the night of October 4, 1947. The testimony discloses that the defendant used a similar scheme and a similar plan to rape the prosecutrix and the other girl. Both victims were young working girls, whom he had known for only a few days. In each case the victims were raped on the property of Fort Jackson on a side dirt road. In each case he took his victims to a desolate and deserted section of the Fort Jackson reservation to commit the crime and where outcries could not be heard. In each case, the defendant, shortly after meeting his victims, carried each one to the Officers Club and offered each one liquor to drink. Upon leaving the Officers Club he led each one of his victims to believe he was taking her home, but instead of taking her home, he turned off onto a side dirt road and drove some distance down the dirt road and then turned the car around. In each instance each of the girls begged him to take her home. In each instance he excused himself and went behind the car for a few minutes, and then came to the side of the car where the girl was sitting. In each instance he forced the girls from the seat of the car; when each of the girls sought to escape by running away from him, he overtook each and brought her back to the automobile; in each case he forced his victim onto the front seat of the automobile and forcibly placed each in similar positions on the front seat, holding each in such position that movement and resistance were impossible, and in which position he succeeded in accomplishing his purpose; that he ruthlessly squelched each attempt of his victims to attract attention, and told each that she could not be heard. Each of the victims begged him to take her home, but he refused to do so until he had accomplished his purpose by force, in the course of which he subjected both victims to continuous and lengthy sexual abuse. After the defendant's arrest two pairs of men's shorts were found in his quarters stained with blood and semen. The defendant, however, contended, when he took the witness stand, that these stains came from having sexual intercourse with one Laura Mae Matthews, a girl he had met a short time before, and whom he testified he expected to marry when he obtained a divorce from his second wife. Blood and semen stains were also found in several places on the front seat of the automobile used by the defendant on the night of the offense.

Blood and semen were also found upon the trousers of the defendant which he admitted he wore on the night of the offense.

The defendant was not taken by surprise. The attorneys for the defendant knew a week before the trial that the Government intended to offer the evidence of the other victim, and discussed her testimony with her before the trial. (See cross-examination of other girl by defense counsel.) Defendant, when he took the witness stand, neither admitted nor denied the rape of the other girl.

At the time the testimony in question was admitted I admonished the jury that the defendant in this case was not charged with having raped the other girl, that he was only charged with having raped the alleged victim named in the indictment, and no other; that this evidence was not being admitted for the purpose of proving that he raped the prosecutrix, but that it was admitted for the sole purpose of attempting to show identity, intent, motive, or of showing a plan, scheme or design, or bent of mind of the defendant. In my charge I cautioned the jury fully to the same effect.

■■ At the outset, it must be remembered that the plea of not guilty made available to the defendant every defense known to the law. Under such plea the defendant could have claimed an alibi; he could have said that he attempted to rape the prosecutrix, but failed in penetration; he could have contended that not he, but someone else raped the defendant; he could have said that he had no intention of using force to overcome the resistance of the prosecutrix; he could have claimed incapacity; or he could have refused to take the stand and testify to any defense. The Government could not anticipate or assume what the defense of the defendant would be. Unless the precise defense of the defendant be disclosed in advance the prosecution may in fairness assume that every element of the offense charged may come into issue. Wigmore on Evidence, 3d Ed., Volume II, sec. 307.

■ It should be observed that in a prosecution for rape under the federal statute the lesser offense of assault with intent to rape is included. 18 U.S.C.A. § 565. The lesser offense of assault with intent to rape was an issue in this case until the defendant took the stand and admitted penetration.

■ Intent is the purpose to use a particular means to effect a definite result. People v. Molineux, 168 N.Y. 264, 61 N.E. 286, 62 L.R.A. 193. In a rape case "there must be an *intent* to have intercourse by the use of such force as is necessary to overcome the resistance encountered to accomplish the act, despite the unwillingness and resistance of the female." Braswell v. State, 170 Ark. 1192, 280 S.W. 367, 368. (Emphasis added.)

■ "To constitute a crime the act must, except in the case of certain statutory crimes, be accompanied by a *criminal intent* or by such negligence or indifference to duty or to consequences as is regarded by the law as equivalent to a criminal intent, the maxim being, Actus non facit reum, nisi mens sit rea—a crime is not committed if the mind of the person doing the act is innocent." 16 C.J. page 74. (Emphasis added.)

22 C.J.S., Criminal Law, § 29, at page 84, puts it this way: "Except as otherwise provided by statute, an *overt act* to constitute a crime must be accompanied by a criminal intent or by such negligence as is regarded by law as equivalent to a criminal intent." (Emphasis added.) The overt act in a case of rape is penetration by force without the consent of the female.

■ In Reg. v. Tolson, 23 Q.B.D. 168, 185, Sir James Fitzjames Stephen, in discussing the foregoing maxim, said: "* * * the mental elements of different crimes differ widely. 'Mens rea' means in the case of murder, malice aforethought; in the case of theft, an intention to steal; *in the case of rape, an intention to have forcible connection with a woman without her consent;* and in the case of receiving stolen goods, knowledge that the goods were stolen." Note in 16 C.J. at page 74. (Emphasis added.)

"It has always been the law (unless otherwise prescribed by statute) that to convict one of crime requires the proof of an intention to commit a crime." Nosowitz v. United States, 2 Cir., 282 F. 575, 578.

622

Therefore, in a charge of rape, and in a charge of the included lesser offense of assault with intent to rape, intent is an issue.

■ Of course, evidence of other offenses and independent crimes and convictions are generally incompetent to establish proof of the guilt of an accused, but it is well settled that evidence of other similar offenses committed or attempted by the accused is admissible to show, or when it tends to show, his criminal intent or purpose with respect to the offense charged; such evidence is admissible to prove his identity as the perpetrator of a crime charged; it is admissible to prove scienter or guilty or criminal knowledge with respect to the crime charged; it is admissible when it tends to prove a scheme, plan, system, design or course of conduct; and where a defendant is asserting a good and lawful intent in conduct, evidence as to past transactions similar to the unlawful acts charged, is admissible. 1 Wharton Criminal Evidence, 10th Ed. § 31, p. 60; 22 C.J.S., Criminal Law, §§ 684-687, pages 1097–1109; Lisenba v. California, 314 U.S. 219, 227, 62 S.Ct. 280, 86 L.Ed. 166; Glasser v. United States, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680; Burt v. United States, 5 Cir., 139 F.2d 73, certiorari denied, 321 U.S. 799, 64 S.Ct. 936, 88 L.Ed. 1087; Gilliland v. United States, 321 U.S. 799, 64 S.Ct. 936, 88 L.Ed. 1087, certiorari denied; Breedin v. United States, 4 Cir., 73 F.2d 778, 780; Tincher v. United States, 4 Cir., 11 F.2d 18, 20; Lynch v. United States, 4 Cir., 12 F.2d 193; Samuels v. United States, 8 Cir., 232 F. 536, Ann.Cas. 1917A, 711; Shea v. United States, 6 Cir., 251 F. 440; Jones v. United States, 9 Cir., 179 F. 584, 585, 610; Williamson v. United States, 207 U.S. 425, 451, 28 S.Ct. 163, 52 L.Ed. 278.

The exceptions to the general rule have been held to apply in murder cases. Wigmore on Evidence, 3d Ed., Vol. II, § 363; Lisenba v. California, 314 U.S. 219, 62 S. Ct. 280, 86 L.Ed. 166; Copeland v. United States, 80 U.S.App.D.C. 308, 152 F.2d 769; People v. David, 12 Cal.2d 639, 86 P.2d 811; Williams v. People, 114 Colo. 207, 158 P.2d 447, 159 A.L.R. 509; Hunter v. State, 188 Ga. 215, 3 S.E.2d 729; McKay

v. State, 200 Ga. 120, 36 S.E.2d 55; State v. Rediker, 214 Minn. 470, 8 N.W.2d 527; State v. Lord, 42 N.M. 638, 84 P.2d 80; State v. Biggs, 224 N.C. 722, 32 S.E.2d 352; State v. Hepperman, 349 Mo. 681, 162 S.W.2d 878.

The exceptions to the general rule have been applied in cases of assault with intent to rape, in statutory rape cases and in forcible rape cases.

At the time this testimony was offered it should be remembered that the lesser offense of assault with intent to rape was at that stage of the cases included in the indictment.

In Wigmore on Evidence, 3d Ed., Volume II, § 357, it is said: "(a) Where the charge is of assault with intent, (to rape) the propriety of such evidence cannot be doubted. * * * There need *be no limitation as to the person assaulted,* because the only purpose is to negative any other than the rape-intent, and a previous rape-assault on another woman has equal probative value for that purpose, *for it is the general desire to satisfy lust that is involved in this crime, and no particular woman is essential for this.*" (Emphasis added.)

■ In 1 Wharton, Criminal Evidence, 11th Ed., 1935, § 252, the rule is thus stated: "Thus, in rape, circumstantial evidence showing prior acts is relevant where the prior acts are so connected with the particular crime at issue that the proof of one fact with its circumstances has some bearing upon the issue on trial, as showing the intent. *Such evidence has a peculiar relevancy where the charge is assault with intent to commit rape, as in this case the act need not be limited to the person assaulted, for it is the general purpose that is involved in the assault, and no particular person is essential to show such purpose and motive, and such evidence is relevant to show lustful intent.*" (Emphasis added.)

In the case of State v. Ferrand, 210 La. 394, 27 So.2d 174, 176, 167 A.L.R. 559, it is said that: "By the great weight of authority (there are a few cases to the contrary) an exception to the rule is recognized in the trial of sexual offenses including incest, carnal knowledge, adultery, for-

nication, *and rape.* Under the exception evidence of previous acts or attempted acts of intercourse by the accused with the prosecutrix, at a time not too far remote, is relevant and admissible for *corroborative purposes* and to show a *lustful disposition,* notwithstanding that such acts are, in and of themselves, crimes. Wharton's Criminal Evidence, 11th Ed., Section 356; Underhill's Criminal Evidence, 4th Ed., Section 186; Wigmore on Evidence, 3d Ed., Section 398; Jones, Commentaries on Evidence, 2d Ed., Section 623; 22 C.J.S., Criminal Law, § 691." (Emphasis added.)

In Bracey v. United States, 79 U.S.App. D.C. 23, 142 F.2d 85, 88, the Circuit Court of Appeals for the District of Columbia, said: "Another well recognized exception to the general rule was recently applied by this court in Hodge v. United States, 75 U.S.App.D.C. 332, 126 F.2d 849, where we held that in trials for sexual offenses, evidence is admissible concerning acts of intercourse between an accused and the prosecutrix prior to the specific act upon which the indictment is based. The theory of this exception is that as the mental disposition of the accused, at the time of the act charged, is relevant, evidence that at some prior time he was similarly disposed is also relevant. Evidence of prior acts between the same parties is admissible, therefore, as showing a disposition to commit the act charged; the probabilities being that the emotional predisposition or passion will continue. The question has not been decided in the District of Columbia whether this exception to the general rule should include sex offenses committed by the accused upon other victims than the one named in the indictment. *Logically the exception would seem to include such other offenses. The emotional predisposition or passion involved in raping one little girl would seem to be the same as that involved in raping another. Evidence of such a crime committed upon one little girl shows a disposition to commit the same crime upon another, and the probability that the emotional predisposition or passion will continue is as great in one case as the other.* The better reasoned cases in other jurisdictions also support the admission of such evidence, within the exception to the general rule.[11] However, as this question was not considered by either party in the present case, we prefer to withhold our decision upon it until, on appeal in some other case, it may be properly briefed and argued." (Emphasis added.)

While there are authorities to the contrary, there are a number of statutory rape cases in which evidence as to similar offenses committed by the defendant upon girls other than the prosecuting witness was held to be, or recognized as being admissible, either as incidents in the commission of a common criminal design, as showing the course of conduct of the defendant, the lustful disposition of the defendant, or for similar reasons. Lee v. State, 246 Ala. 69, 18 So.2d 706; Taylor v. State, 55 Ariz. 13, 97 P.2d 543; People v. Branch, 77 Cal.App. 384, 246 P. 811; State v. Hammock, 18 Idaho 424, 110 P. 169; State v. Dowell, 47 Idaho 457, 276 P. 39, 68 A. L.R. 1061; State v. Bisagno, 121 Kan. 186, 246 P. 1001; Commonwealth v. Lowe, 29 Del.Co.R. 426; State v. Cupit, 189 La. 509, 179 So. 837.

Where the charge is (forcible) rape, Wigmore says, "the doing of the act being disputed, it is perhaps still theoretically possible that the intent should be in issue"; but, "if the act is proved", Wigmore, in forcible rape cases, seems to prefer to make the exception to the rule available under the design principle, rather than under the intent principle. Thus, in forcible rape cases in Wigmore on Evidence, 3d Ed., Vol. II, § 357 (3), it is said: "The Design or Plan principle (ante, § 304) requires that the former act or acts should indicate, *by common features,* a plan or design which tends to show that it was carried out by doing the act charged. Here it is obvious that there is much room for difference of opinion in a given case. The committing of a single previous rape, or rape-attempt, upon another woman may not in *itself* in-

---

[11] State v. Jenks, 126 Kan. 493, 268 P. 850; State v. Shtemme, 133 Minn. 184, 158 N.W. 48; Suber v. State, 176 Ga. 525, 533, 168 S.E. 585, 589; State v. Cupit, 189 La. 509, 515, 179 So. 837, 839; Proper v. State, 85 Wis. 615, 55 N.W. 1035. See 1 Wharton, Criminal Evidence, 11th Ed.1935, § 252: * * * (hereinbefore quoted). State v. Bennett, 117 Me. 113, 102 A. 974."

dicate such a design, * * *. Nevertheless, a single previous act, even upon another woman, *may, with other circumstances,* give strong indication of a design (not a disposition) to rape; and a previous act of the sort upon the same woman ought in itself usually be regarded as indicating such a design.

"*Courts have shown altogether too much hesitation in receiving such evidence.* Even when rigorously excluded from any bearing it may have upon Character (ante, § 194), *it may carry with it great significance as to a specific Design or plan of rape.* There is no reason why it should not be received when it does convey to the mind, according to the ordinary logical instincts, *a clear indication of such a design. There is room for much more common sense than appears in the majority of the rulings.*" Emphasis added.)

In 167 A.L.R. at page 594, it is said: "Evidence of the prior rape of, or assault upon, another woman has been held to be admissible for purposes of identification, or of showing the plan, scheme, or bent of mind of the defendant in a prosecution for forcible rape. Johnson v. State, 1942, 242 Ala. 278, 5 So.2d 632, writ of certiorari denied in 1942, 316 U.S. 693, 62 S.Ct. 1299, 86 L.Ed. 1763, rehearing denied in 1942, 316 U.S. 713, 62 S.Ct. 1310, 86 L.Ed. 1778, infra, III b 2(a) (2); Merritt v. State, 1929, 168 Ga. 753, 149 S.E. 46; Suber v. State, 1933, 176 Ga. 525, 168 S.E. 585; Barkley v. State, 1940, 190 Ga. 641, 10 S. E.2d 32; Andrews v. State, 1943, 196 Ga. 84, 26 S.E.2d 263, writ of certiorari denied in 1943, 320 U.S. 780, 64 S.Ct. 87, 88 L.Ed. 468."

Another annotation in the same Volume (167 A.L.R.) at page 595, reads as follows: "The fact that, prior to the commission of the offense charged, the defendant in a prosecution for forcible rape conspired with another to ravish 'some white woman' has been held to be admissible in evidence, notwithstanding it was evidence of another distinct crime, since it threw light on the motive and intent of the defendant. Daniels v. State, 1943, 243 Ala. 675, 11 So.2d 756, writ of certiorari denied in 1943, 319 U.S. 755, 63 S.Ct. 1168,

87 L.Ed. 1708; Robinson v. State, 1943, 243 Ala. 684, 11 So.2d 732, writ of certiorari denied in 1943, 319 U.S. 755, 63 S. Ct. 1168, 87 L.Ed. 1708."

At page 593, in the same Volume (167 A.L.R.), it is said: "Evidence of prior forcible rape or attempted rape upon the same female has been held to be admissible in a trial for common-law (forcible) rape. Snead v. State, 1942, 243 Ala. 23, 8 So.2d 269; State v. Carpenter, 1904, 124 Iowa 5, 98 N.W. 775; State v. Lewis, 1904, 112 La. 872, 36 So. 788; State v. Patrick, 1891, 107 Mo. 147, 17 S.W. 666; People v. O'Sullivan, 1887, 104 N.Y. 481, 10 N.E. 880, 58 Am.Rep. 530; Kilpatrick v. State, 1941, 71 Okl.Cr. 129, 109 P.2d 516; Cecil v. Territory, 1905, 16 Okl. 197, 82 P. 654, 8 Ann. Cas. 457, overruled on another point in Morris v. State, 1913, 9 Okl.Cr. 241, 131 P. 731."

In the case of Barkley v. State, 190 Ga. 641, 10 S.E.2d 32, 33, the Court said: "In the instant case, (forcible rape) evidence that *the defendant and another man, acting in concert, had committed the offense of rape on other females in the same vicinity within a period of about a month, and in so doing had surprised and overcome their victims by the same general method, was admissible for the purpose of showing general plan or scheme, and to identify the defendant as the perpetrator of the crime for which he was being tried.* The evidence formed an exception to the general rule * * *. Frank v. State, 141 Ga. 243 (2), 80 S.E. 1016; Williams v. State, 152 Ga. 498, 110 S.E. 286; Merritt v. State, 168 Ga. 753, 149 S.E. 46; Suber v. State, 176 Ga. 525, 168 S.E. 585; White v. State, 177 Ga. 115, 125 (3), 169 S.E. 499; Cooper v. State, 182 Ga. 42 (3), 184 S.E. 716, 104 A.L.R. 1309; Sisk v. State, 182 Ga. 448, 185 S.E. 777; Melton v. State, 184 Ga. 343, 191 S.E. 91."

In the case of Merritt v. State, 168 Ga. 753, 149 S.E. 46, 47, the defendant Merritt was convicted of (forcible) rape. In addition to the female named in the indictment, two others were sworn as witnesses, and they testified to rapes committed by Merritt upon them. The Supreme Court of Georgia, in overruling the objection to

the admission of such evidence, said: *"The manner of committing the crimes, the location, the circumstances,* are all such as to authorize a jury to believe that all were committed by the same man. * * * Under these circumstances the evidence showed a general connected plan or scheme, and was admissible to identify the defendant as the perpetrator of the crime for which he was on trial." (Emphasis added.)

In Andrews v. State, 196 Ga. 84, 26 S. E.2d 263, 272, the defendant was convicted of rape. The Supreme Court of Georgia in this case recognized the rule that proof of crimes of a similar nature is admissible for the purpose of identifying the defendant or for showing a common plan or purpose, and said, *"A similar plan with similar methods in the same locality serve both to identify the defendant and to show a common plan or method."* (Emphasis added.)

In the case of Suber v. State, 176 Ga. 525, 168 S.E. 585, the defendant Suber was convicted of forcible rape. Evidence of other crimes (rape and assault with intent to rape) was admitted to show accused's bent of mind. The Supreme Court of Georgia held this was not error, and said in the syllabus by the Court, "A new trial was not required by the assignments of error in the first three special grounds of the motion therefor. Frank v. State, 141 Ga. 243, 80 S.E. 1016; Williams v. State, 152 Ga. 498, 110 S.E. 286; Green v. State, 172 Ga. 635, 639, 640, 158 S.E. 285; Wilson v. State, 173 Ga. 275(6), 160 S.E. 319. Though evidence tending to show the commission of other crimes by the defendant, with the co-operation and assistance of his codefendant, Murphy, was admitted to show the bent of mind of these defendants, the jury were instructed that the evidence upon this point should not be considered for the purpose of showing that the accused was guilty of any such transaction as to which the testimony was admitted, and that the jury should use this testimony, in the consideration of the case before them, as a circumstance to throw light upon the intent, scheme, plan, or bent of mind with which the defendants made the assault in the case on trial, if they found that any

assault was made by the defendants." In this case the Court said, "The testimony of (the other victims) Miss Williamson, Mrs. Bryan, and Miss Leverette, while admitted only for the purpose of showing scheme, plan, or 'bent of mind' of the accused, was of such nature as to authorize the jury to find that the defendant's 'bent of mind' was to have sexual intercourse with females at his own will whenever he felt thereto inclined; * * *."

In the case of Johnson v. State, 242 Ala. 278, 5 So.2d 632, 634, 635, the appeal was from a judgment for conviction of rape with infliction of the death penalty. While in jail the defendant confessed to the crime, but upon the trial he plead not guilty and claimed an alibi. Testimony was admitted to show attacks upon other women prior to the rape of the prosecutrix. In sustaining the admission of evidence of other attacks, the Alabama Appellate Court said: "The principle here controlling, however, is well expressed in 20 Amer.Jur. p. 292, as follows: 'The general rule that evidence of separate and independent crimes is inadmissible to prove the guilt of a person upon trial for a criminal offense is subject to a well defined exception with respect to proof of the identity of the accused. The broad rule that where evidence tends to aid in identifying the accused as the person who committed the crime under investigation, it is admissible, in spite of the fact that it tends to show that the accused is guilty of other crimes for which he is not on trial.' * * * *The other offenses here shown were all of similar character, committed within the same territory and all within a period of eighteen days."* (Emphasis added.)

It will be noted that I have adverted to authorities to show that the exceptions to the general rule have been applied in statutory rape cases. I have done this because, in my opinion, the same reasoning and logic, given for the admission of other similar offenses in statutory rape cases, both upon the prosecutrix and another woman, apply with equal force in forcible rape cases. For instance, the same reasoning and logic applied by the Circuit Court of Appeals for the District of Co-

lumbia in the Bracey case, supra. with reference to a statutory rape case, may with equal force be applied in a forcible rape case, for there is just as much, if not more, lust, sexual passion or emotional predisposition involved in a forcible rape case as there is in a statutory rape case. It would seem that such impelling sexual feelings must be greater in a forcible rape case than in a statutory rape case, and it would seem that the exception to the general rule would apply with more logic and reasoning in a forcible rape case than it would in a statutory rape case.

Hence, paraphrasing the words of the United States Court of Appeals of the District of Columbia, in the Bracey case, supra, it may just as logically be said that in a forcible rape case that the exception would seem to include other offenses of rape. The emotional predisposition, sexual passion or lust involved in the *raping* of one girl would seem to be the same as that involved in *raping* another. Evidence of such a crime committed upon one girl shows the disposition to commit the same crime upon another, and the probability that the emotional predisposition, or violent sexual passion, or lust, or bent of mind, would continue, is as great in one case as in the other. This reasoning is especially logical in the present case where the defendant raped two girls shortly after he had met them, and during the first time he went out with them, and apparently without any feeling for either, except a general feeling of lust, violent sexual passion or emotional predisposition to rape.

It is also my opinion that the same reasoning and logic given for the admission of other similar offenses in cases of assault with intent to rape apply with equal force to forcible rape cases for the same reasons.

As stated by Wigmore, "where the charge is assault with intent (to rape), the propriety of such evidence cannot be doubted", and if, as also stated by him, such evidence has "probative value" for the purpose of showing "the general desire to satisfy lust that is involved in this crime" and "no particular woman is essential for this," it seems to me to follow .from this reasoning that the only conclusion to which reason and logic would lead would be that the evidence of the prior offense in the present case, so closely connected in point of time, place, similar circumstances and same general method, with the offense charged, is also admissible.

With the proof of his conduct sexually toward the other girl before he raped the prosecutrix, it is but a reasonable conclusion that his acts at the time he raped the prosecutrix were with the criminal intent to satisfy his lust, if necessary, by force, and was of "such nature as to authorize the jury to find that the defendant's 'bent of mind' was to have sexual intercourse with females at his own will whenever he felt thereto inclined". Such testimony had "probative value" for the purpose of showing, as Wigmore says, defendant's "general desire to satisfy lust". Such evidence tends to shed light upon the intention of the defendant at the time he assaulted the prosecuting witness, as well as at the time of penetration.

The question of defendant's intention was in issue in this case from the time he, by false representations, secured the prosecutrix' acquiescence to let him take her home in his car, until the overt act of penetration was committed. In his conduct toward the prosecutrix during this time the defendant asserted a good and lawful intent.

The proof of his conduct sexually toward the other girl before he raped the prosecutrix conveys "to the mind, according to the ordinary logical instincts, a clear indication" of a design, scheme or plan to rape; to use his officer's uniform and his automobile as a means of luring his victims to the Officers' Club at Fort Jackson to entertain them and furnish them with liquor and instead of taking them home, to carry them to a secluded spot off the highway at a place where their outcries could not be heard and subject them to sexual abuses; the evidence as to the offense committed against the other girl was admissible as it showed that both offenses resulted from the plan, scheme or design which the defendant had adopted for the purpose of having sexual intercourse with any girl that he might

succeed in transporting to the Officers' Club at Fort Jackson, voluntarily, if possible, and forcibly, if necessary.

The question of his identity was in issue until he took the witness stand and admitted that his written statement was false. It would seem that the evidence of the prior offense in this case, so closely connected in point of time, place, similar circumstances, and same general method, with the offense charged, is admissible to tend to identify the defendant as the perpetrator of the crime. The evidence,· with the attending circumstances, is such as to authorize the jury to believe that both crimes were committed by the same man.

It seems to me that the reasons for the exceptions to the general rule should apply with equal force in rape cases that they do in murder cases. In the case of Lisenba v. California, 314 U.S. 219, 227, 62 S.Ct. 280, 286, 86 L.Ed. 166, where the defendant was convicted of murder, the Supreme Court said: "Testimony was admitted concerning the death of James' former wife, on the widely recognized principle that similar but disconnected acts may be shown to establish intent, design, and system." If testimony is admissible concerning the death of another person on indictment for murder on such a widely recognized principle, then it seems to me that testimony concerning the rape of another woman should be admitted under the same principle in a rape case.

I can see no reason why there should be an exception to the exceptions to the general rule in forcible rape cases. I can think of no reason why the court should favor ravishers in applying exceptions to the general rule, especially since many rapists probably escape without even a trial, because their victims are unwilling to subject themselves to the terrible ordeal of a public trial, carrying with it humiliation, embarrassment and notoriety. I agree with Professor Wigmore in his keen observation that "Courts have shown altogether too much hesitation in receiving such evidence" in connection with forcible rape cases, and that there "is room for much more common sense" in applying the exception to the general rule in such cases.